# UNITED STATES BANKRUPTCY COURT

### District of New Jersey (Camden)

In re  Deborah A Winterbottom _____ ,  Case No.  11-16301-JHW

Debtor  Chapter  7

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

1.  Creditor's Name:  State Farm Bank, FSB.

2.  Amount of the debt subject to this reaffirmation agreement:
$2,673.01 ___ on the date of bankruptcy  $2,673.01 ___ to be paid under reaffirmation agreement

3.  Annual percentage rate of interest: ___ 11.09 ___ % prior to bankruptcy
___ 11.09 ___ % under reaffirmation agreement  ( ✓ Fixed Rate ___ Adjusted Rate)

4.  Repayment terms (if fixed rate):  $ ___ 171.36 ___ per month for ___ 16 ___ months

5.  Collateral, if any, securing the debt: Current market value:$ 3,275.00
Description: 00 Volkswagen New Beetle

6.  Does the creditor assert that the debt is nondischargeable? ___ Yes  ✓ No
(If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is nondischargeable.)

| Debtor's Schedule I and J Entries | Debtor's Income and Expenses as Stated on Reaffirmation Agreement |
|---|---|
| 7A.  Total monthly income from $ 3082.51 | 7B.  Monthly income from all sources after payroll deduction  $ 3082.51 |
| 8A.  Total monthly expenses from Schedule J, line 18  $ 2890 | 8B.  Monthly expenses  $ 2890 |
| 9A.  Total monthly payments on reaffirmed debts not listed on Schedule J  $ 142.51 | 9B.  Total monthly payments on reaffirmed debts not included in monthly expenses  $ 0 |
| | 10B.  Net monthly income  $ 192.51 (Subtract sum of lines 8B and 9B from line 7B. If total is less than zero, put the number in brackets.) |

11.    Explain with specificity any difference between the income amounts (7A and 7B):

12.    Explain with specificity any difference between the expense amounts (8A and 8B):

        If line 11 or 12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that any explanation contained on those lines is true and correct.

_____          _____
Signature of Debtor (only required if              Signature of Joint Debtor (if applicable, and only
line 11 or 12 is completed)                              required if line 11 or 12 is completed)

Other Information

☐    Check this box if the total on line 10B is less than zero. If that number is less than zero, a presumption of undue hardship arises (unless the creditor is a credit union) and you must explain with specificity the sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt:

Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?
___X___ Yes              _____No

If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?
___X___ Yes              _____No

## FILER'S CERTIFICATION

        I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Reaffirmation Agreement Cover Sheet.

_Shelley Reed Brooks_____
Signature

_Shelley Reed Brooks_____
Print/Type Name & Signer's Relation to Case

| | |
|---|---|
| ☐ | **Presumption of Undue Hardship** |
| ☑ | **No Presumption of Undue Hardship** |

(Check box as directed in Part D: Debtor's Statement
in Support of Reaffirmation Agreement.)

# UNITED STATES BANKRUPTCY COURT
## District of New Jersey (Camden)

In re  Deborah A Winterbottom                         ,          Case No.   11-16301-JHW

Debtor                                                                    Chapter   7

## REAFFIRMATION AGREEMENT
*[Indicate all documents included in this filing by checking each applicable box.]*

☑ Part A: Disclosures, Instructions, and          ☑ Part D: Debtor's Statement in
   Notice to Debtor (pages 1 - 5)                          Support of Reaffirmation Agreement

☑ Part B: Reaffirmation Agreement                  ☐ Part E: Motion for Court Approval

☑ Part C: Certification by Debtor's Attorney

*[ **Note** : Complete Part E only if debtor was not represented by an attorney during
the course of negotiating this agreement. **Note also** : If you complete Part E, you must
prepare and file Form 240C ALT - Order on Reaffirmation Agreement.]*

**Name of Creditor:**   State Farm Bank, FSB.

☐ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the
Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

1.       **DISCLOSURE STATEMENT**

**Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:**

**SUMMARY OF REAFFIRMATION AGREEMENT**
This Summary is made pursuant to the requirements of the Bankruptcy Code.

**AMOUNT REAFFIRMED**

The amount of debt you have agreed to reaffirm:          $ 2,673.01

*The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have
accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional
amounts which may come due after the date of this disclosure. Consult your credit agreement.*

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

a. If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: _____ %.

*— And/Or —*

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____ %. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$ _____ @ _____ %;
$ _____ @ _____ %;
$ _____ @ _____ %.

b. If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (I) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: __11.09__ %.

*— And/Or —*

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____%. If different simple interest rates apply to different balances included in the amount reaffirmed,

the amount of each balance and the rate applicable to it are:

$ _____ @ _____ %;
$ _____ @ _____ %;
$ _____ @ _____ %.

c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| 00 Volkswagen New Beetle | $6,590.00 |

*Optional--- At the election of the creditor, a repayment schedule using one Or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of _____ is due on _____ , but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

*— Or —*

Your payment schedule will be ____16____ (number) payments in the amount of $ ____171.36____ each, payable (monthly, annually, weekly, etc.) on the ____6____ (day) of each ____month____ ( week, month, etc.), unless altered later by mutual agreement in writing.

*— Or —*

A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

## 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. If the creditor is not a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. If the creditor is a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

## YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

> **NOTE:** When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

## PART B: REAFFIRMATION AGREEMENT.

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:
Promissory Note and Security Agreement
Note date:    5/22/2008
Original amount:   $6,590.00
Collateral:    00 Volkswagen New Beetle
2. Description of any changes to the credit agreement made as part of this reaffirmation
agreement:

SIGNATURE(S):

Borrower:

Deborah A Winterbottom

(Print Name)

*[signature]*

(Signature)

Date: _4-24-2011_

Co-borrower, if also reaffirming these debts:

_____
(Print Name)

_____
(Signature)

Date: _____

Accepted by creditor:

State Farm Bank, FSB.

(Printed Name of Creditor)

P.O. Box 2328 Bloomington, IL 61702
(Address of Creditor)

*[signature]*

(Signature)

John George
(Printed Name and Title of Individual
Signing for Creditor)

Date of creditor acceptance:

4/4/2011

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: *Chad A. Sherman, Esq.*

Signature of Debtor's Attorney: _____

Date: *4/15/11*

*[Read and complete sections 1 and 2, **OR**, if the creditor is a Credit Union and the debtor is represented by an attorney, read section 3. Sign the appropriate signature line(s) and date your signature. If you complete sections 1 and 2 **and** your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship"]*

1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $_____, and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $_____, leaving $_____ to make the required payments on this reaffirmed debt.

I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here: _____

_____

**(Use an additional page if needed for a full explanation.)**

2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
       (Debtor)

       _____
       (Joint Debtor, if any)
Date: _____

         — Or —
*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

3. I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: *[signature]*
       (Debtor)

       _____
       (Joint Debtor, if any)
Date: *4-9-2011*



**State Farm Bank® FSB**
Bloomington, IL
1-877-734-2265

Date: 05/22/2008

# PROMISSORY NOTE AND SECURITY AGREEMENT

| Borrower: | DEBORAH WINTERBOTTOM |
|---|---|
| Address: | 212 W 25TH AVE<br>N WILDWOOD NJ 08260-2532 |
| Co-Borrower: | |
| Co-Borrower: | |
| Co-Borrower: | |
| Co-Borrower: | |
| Co-Borrower: | . |

**Promise to Pay:** The undersigned ("Borrower", "you" or "your"), jointly and severally, promise(s) to pay to the order of State Farm Bank, F.S.B. ("Lender") at P.O. Box 5961, Madison, Wisconsin 53705-0961, the Amount Financed shown below with interest (Finance Charge) on the unpaid balance of the Amount Financed at the Annual Percentage Rate shown below and accruing daily until the Amount Financed is paid in full. Interest shall be computed on the basis of a year consisting of 365/366 days and charged for the actual number of days elapsed. Borrower shall make payments according to the payment schedule shown below. The due date of the final payment is the final maturity of this Promissory Note and Security Agreement ("Note"), and any remaining unpaid amounts shall be due and owing on that date. The Total of Payments and Finance Charge shown below are estimates based on Borrower making the proper payment on each scheduled due date. Payments made after any due date will increase the total amount of Finance Charge and Total of Payments.

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 11.09% | $1,635.28 (e) | $6,590.00 | $8,225.28 (e) |

(e) means an estimate

Your payment schedule will be:

| Number of Payments: | Amount of Payments: | When Payments are due: |
|---|---|---|
| 48 | $171.36 | Beginning 07/06/2008 |

**Property insurance is required. You may obtain property insurance from anyone acceptable to the Lender.**

**Security:** You are giving a security interest in the motor vehicle, trailer, watercraft or off-road vehicle, and any proceeds thereof being purchased or refinanced with the loan proceeds, or used as collateral for this loan.

| Collateral/<br>Vehicle | Year | Make | Model | Serial No. or VIN |
|---|---|---|---|---|
| Automobile | 2000 | VOLKSWAGEN | BEETLE | 3VWCC21C7YM477264 |

**Filing Fee:** You agree to pay any lien filing fees.

**Late Charge:** If any payment is late more than 10 days you will be charged 5% of the unpaid payment or $25.00, whichever is greater.

**Prepayment: If you pay this Note off in full within 12 months of the date of this Note, you will have to pay Lender a prepayment penalty of $100.**

**Other Terms:** See your contract terms on all pages of this Note for any additional information about nonpayment, default, and required repayment in full before the scheduled date, prepayment refunds and penalties and further information about security interests.

**IF YOU DO NOT MEET YOUR OBLIGATIONS UNDER THIS NOTE, YOU MAY LOSE THE VEHICLE YOU PURCHASED WITH THIS LOAN, OR WHICH SERVES AS COLLATERAL FOR THIS LOAN.**

125515.3   Printed in U.S.A.   11-29-2007          Page 1 of 5

**USE OF AGENT:** (1) Your financing is being obtained through clerical assistance of a State Farm insurance agent or staff member; (2) no compensation of any kind is to be paid between the seller of your vehicle and the State Farm agent or staff member; (3) no referral relationship or arrangement is to exist between the State Farm agent or staff member and the seller of your vehicle relating to the purchase of your vehicle or your loan; and (4) you are to receive the credit application, this Note, and other documentation for this loan from the State Farm agent or staff member, and those documents are to be completed and executed in the presence of the State Farm agent or staff member, and not on the premises of the seller of your vehicle. If your loan is being obtained through the assistance of a third party ("Agent"), you understand that the Agent is not an employee of the Lender and the Agent is not authorized to make representations or bind the Lender.

IF THE FOREGOING DISCLOSURE IS NOT AN ACCURATE STATEMENT OF THE WAY YOUR LOAN TRANSACTION HAS BEEN HANDLED, DO NOT EXECUTE ANY FURTHER DOCUMENTATION AND CONTACT STATE FARM BANK AT ONCE AT 1-877-734-2265.

By executing this Note you acknowledge that you have received this disclosure, that you have read this disclosure, that you understand this disclosure, and that your loan transaction has been handled in accordance with the conditions stated above.

## The following Notice applies only if the transaction is a "Purchase Money Loan" under 16 C.F.R. Section 433.1(d)

### NOTICE

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

### ADDITIONAL TERMS AND PROVISIONS

**PAYMENTS:** Except as otherwise provided in this Note, Borrower may make a prepayment of principal in full or in part at any time before maturity without penalty. Prepayments of principal will be applied to the last installment(s) and will not excuse or defer any scheduled payments until this Note is paid in full. If Borrower prepays this Note in full, then Borrower may be required to pay Lender a prepayment penalty as disclosed above in the Truth in Lending Disclosures.

**SECURITY INTEREST:** To secure payment of this Note and all renewals and extensions hereof, Borrower grants and pledges to Lender a security interest in the vehicle described above, and all attachments and all accessions thereto and all proceeds thereof ("Collateral").

**PERFECTION OF SECURITY INTEREST:** Borrower is responsible for obtaining clear title to the Collateral, including removing or paying off any lien(s) on the Collateral and allowing Lender to place a first lien on the Collateral. To the extent allowed by applicable law, Lender is hereby appointed as Borrower's attorney-in-fact to do at Lender's option and at Borrower's expense all things necessary or desirable to perfect, keep perfected and maintain Lender's security interest in the Collateral, to protect such Collateral and to execute any document or instrument to perfect, keep perfected and protect such security interest of the Lender in the Collateral. IN NO EVENT WILL LENDER BE LIABLE TO BORROWER FOR FAILURE TO OBTAIN CLEAR TITLE TO THE COLLATERAL, INCLUDING REMOVING OR PAYING OFF ANY LIEN(S) ON THE COLLATERAL.

**COLLATERAL:** Borrower covenants, represents and agrees with Lender as follows: (a) that Borrower is the owner of the Collateral free from any lien, security interest, encumbrances or claim and will defend the Collateral against the claims and demands of all persons; and (b) that Borrower will not sell, lease or encumber the Collateral or grant any subsequent security interest therein nor part with possession thereof; and (c) that if Collateral is in the possession of Borrower, that Borrower will not permanently remove the Collateral from Borrower's state of residence without the prior written consent of Lender; and (d) that Borrower will not use or permit the Collateral to be used in violation of any law, ordinance or policy of insurance covering said Collateral; and (e) that Borrower will maintain the Collateral in good condition and repair and shall pay taxes and assessments levied on the Collateral. Borrower will promptly advise Lender of any change of address or change in location of the Collateral.

**USE OF PROCEEDS:** The proceeds of this Note will be used to acquire the Collateral or to refinance prior indebtedness used to acquire the Collateral and Lender may disburse such proceeds to the seller of the Collateral or to such other lender.

**PAYMENT OBLIGATIONS:** Loss, theft, damage to, destruction and seizure of the Collateral shall not relieve Borrower from the payment and performance of any obligation hereunder or the indebtedness secured hereby.

**INSURANCE:** Borrower shall procure and maintain insurance on the Collateral for the full term of this Note against the risks of fire, theft, collision and such other risks as Lender may require in such amounts and conditions and with such insurers as are satisfactory to Lender; and Borrower shall deliver to Lender within ten (10) days from the date of the Note, a fully paid policy or policies of insurance containing a Lender's Loss Payable Clause (stating that the proceeds are payable to the Lender) in favor of Lender providing for ten (10) days prior written notice of cancellation. If Borrower shall fail, for any reason, to insure the Collateral as required by this Note, or if Borrower's insurance shall be canceled, Lender at its option, may procure such insurance as shall be deemed necessary by Lender and advance the premium therefor on behalf of Borrower. Borrower promises to pay such premiums to Lender, with interest thereon at the Annual Percentage Rate shown above, as additional indebtedness due hereunder and secured hereby, or Lender may, at its option, declare all obligations secured hereby to be immediately due and payable. Borrower assigns to Lender any unearned or returned premiums. To the extent allowed by applicable law, Lender is appointed Borrower's attorney-in-fact to endorse any check or draft payable to Borrower in order to collect such unearned premiums or any benefits of such insurance. All sums received by Lender as payment of insurance losses or for return of premiums under said policies of insurance shall, at the option of Lender, be applied to the unpaid principal balance or to currently maturing installments on this loan.

**TOTAL LOSS DEBT CANCELLATION PROVISION:** AMOUNT WE WILL WAIVE: If the conditions of this provision are satisfied, we will waive the difference between your unpaid principal balance under this Note as of the date of the total loss ("Total Loss") and the entire insurance settlement less: (1) any past due or extended payment amounts as of the date of the Total Loss; (2) any interest, fees, or charges incurred or assessed prior to or after the date of the Total Loss through the date of settlement; (3) any refundable portion of any credit insurance premium; and (4) any amount Borrower could otherwise have collected from any insurer through reasonable diligence. CONDITIONS: We will waive the amount set forth above, provided the following stipulations are met: (1) this provision and this Note are in effect; (2) the Collateral is determined to be a Total Loss by the primarily responsible insurer, (3) the insurance coverage on the Collateral required under this Note has been maintained, is currently in force, and the full amount of any insurance proceeds is paid to us; (4) Borrower has complied with all other terms and conditions of the Note (including making required payments as they become due while awaiting a settlement from the insurance company); (5) Borrower is not in default, as of the date of the Total Loss; (6) Borrower has paid us any deductions the insurance company may make when it honors the Borrower's claim (excluding the deductible amount); (7) no other coverage is available under any guaranteed asset protection coverage or credit insurance provided to Borrower under any insurance policy; (8) Borrower notifies us within sixty (60) days of the date following the Total Loss and provide us with a copy of the settlement, declarations page of the policy, any accident or police report and any other documentation we request; and (9) Borrower takes necessary steps to recover the Collateral and prevent or reduce any further loss to the Collateral. EXCLUSIONS: This provision will not apply if the Total Loss is (1) due to Borrower's surrender; or (2) due to acts of terrorism; or (3) excluded from coverage by the insurance coverage on the Collateral; or (4) in the event multiple pieces of Collateral appear on the Note, the amount waived for any one piece of Collateral shall be an amount of the outstanding principal balance equal to the proportionate value of the Collateral as of the Note date and the original principal balance of the loan. TERM: This Debt Cancellation provision commences on the date this Note becomes effective and terminates on the date this Note is terminated. This is NOT an insurance policy.

**RETURNED INSTRUMENT CHARGE:** Borrower agrees to pay a charge of $25 for each check or instrument submitted as payment on this loan which is later returned unpaid.

**EVENTS OF DEFAULT AND ACCELERATION:** If Borrower shall default in the payment, when due, of any installment of this Note or in the payments or performance of any other obligation hereunder or indebtedness due to Lender, or in case of loss, substantial damage to, destruction, sale, encumbrance, concealment, removal, attachment or levy upon the Collateral; or if any proceeding shall be instituted by or against Borrower (or Borrower's business) under any bankruptcy, insolvency or similar statute; or Borrower shall make an assignment for the benefit of creditors, or Lender shall deem itself insecure; or upon the death or incompetency of any Borrower, endorser or co-signer; or if Borrower makes any representation, warranty, statement or signature to Lender that is false or misleading; then upon the happening of any of the foregoing events of default, Lender at its option may declare the unpaid balance of this Note including accrued interest and all other indebtedness and obligations of Borrower to Lender immediately due and payable, without notice or demand. Borrower agrees to pay all of Lender's reasonable costs and expenses in enforcing this Note or in realizing upon the Collateral, including court costs and reasonable attorneys' fees, to the extent permitted by applicable law (including bankruptcy or insolvency proceedings) in addition to an administrative fee of $150.00 assessed by Lender.

**REMEDIES OF LENDER:** Upon the occurrence of any event of default, the Lender shall have all of the rights and remedies of a secured party as provided by Article 9 of the Uniform Commercial Code, including, but not limited to, the right of Lender to take immediate possession of the Collateral and anything located therein, with or without judicial process, and for such purpose, to enter on the premises where such Collateral may be located. In the event of default, Borrower agrees to make the Collateral available to Lender at a place acceptable to Lender which is convenient to Borrower. In the event the Collateral is repossessed, Borrower will be assessed an administrative fee of $150.00 in addition to any repossession and storage charges. In the event of resale of the Collateral after repossession, Borrower expressly agrees that the requirements of reasonable notice shall be met if notice is delivered or mailed to Borrower at the address of Borrower shown herein prior to the sale or other disposition of the Collateral as provided by applicable law. Disposition of the Collateral may be made in any commercially reasonable manner. The net proceeds realized upon any sale or other disposition of the Collateral, after deducting expenses of the sale or other disposition, repossession or storage incurred by Lender, shall be applied to the payment of this Note and all other indebtedness or obligations of Borrower to Lender, in such manner as Lender shall elect. Lender shall account to Borrower for any surplus thereafter realized on such disposition, Borrower shall remain liable for any and all unpaid amounts remaining or any other deficiency, which Borrower agrees to pay immediately. All rights and remedies of Lender, whether provided for herein or conferred by law, are cumulative.

**ADDITIONAL REMEDIES:** Demand, presentment for payment, notice of dishonor, and notice of intent to accelerate are hereby waived by Borrower and all cosigners and endorsers hereon. Lender is authorized to appropriate and apply toward payment of this Note any other property belonging to Borrower in the possession of Lender, as well as any indebtedness of Lender to Borrower, and Lender is hereby given a first and prior lien upon such other property. All cosigners and endorsers consent that the time of payment may be extended or renewal notes taken by the holder hereof without notice and that such extension or renewal shall not discharge their liability hereon.

**PROCESSING OF PAYMENTS:** Lender's business days for processing payments are Monday through Friday, excluding Lender's holidays. Payments received on a non-business day will be processed on the next business day, and Finance Charges (interest) continue to accrue on the unpaid balance of the Note. The payment due date will not be extended if it falls on a non-business day, and in such event Borrower should make the payment to Lender in advance of the due date.

**PHONE NOTIFICATION:** Borrowers agree that State Farm Bank may contact Borrowers at the land line/cell phone numbers that have been provided on the application, or any phone numbers that Borrowers may provide in the future, either directly or through the use of an automated dialer.

**WAIVER AND SEVERABILITY:** No delay or omission by Lender in exercising any right or remedy shall operate as a waiver of such right or remedy or any other right or remedy. A waiver on any one occasion shall not act as a waiver for any other occasion. Lender may accept late or partial payments or payments marked "in full" or with similar language, without waiving any rights or remedies. If any provision of this Note is held invalid, such invalidity shall not affect the validity and enforceability of the remaining provisions of this Note.

**SUCCESSORS AND ASSIGNS:** All rights of Lender shall also benefit the successors and assigns of Lender, and all obligations of Borrower shall be binding upon Borrower's heirs, beneficiaries, personal representatives, successors and assigns. Borrower may not assign its rights and obligations under this Note, unless the Lender agrees in writing to such assignment. If there is more than one Borrower, their obligations hereunder shall be joint and several. Any changes to this Note must be in writing and signed by Lender.

**PRIVACY:** Lender does not share non-public personal information about you except as stated in the State Farm Privacy Policy which has been provided to you. We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**GOVERNING LAW:** This Note is governed by federal law and, to the extent not preempted thereby, by the law of the State of Illinois. The acceptance of the Note is expressly conditioned upon Lender's approval and all proceeds will be disbursed by Lender at its principal office in Illinois. Regardless of where you live, your credit application will be forwarded to Lender in Illinois and Lender will process your application and make all lending decisions at its offices in Illinois. This Note is entered into in Illinois upon Lender's acceptance. All terms and conditions in this Note (including applicable fees) are material to the determination of the interest rate.

Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (Borrower(s)) and us (Creditors) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NOTICE TO BORROWER: (A) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON EACH PAGE, EVEN IF OTHERWISE ADVISED. (B) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES. (C) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (D) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS NOTE.

ACKNOWLEDGEMENT: Borrower agrees to the terms of this Promissory Note and Security Agreement including the additional terms set forth on the preceding pages. Borrower acknowledges receipt of a completed copy of this Note and the credit insurance disclosure statement (if applicable) prior to consummation of the loan.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

BORROWER(S) SIGNATURES

X _____
DEBORAH   WINTERBOTTOM

X _____

X _____

X _____

X _____

X _____


LENDER

MEMBER
**FDIC**

125515.3   Printed in U.S.A.   11-29-2007          Page 5 of 5

# CERTIFICATE OF TITLE

1 3VWCC 21C7Y M4772 64 Z 2000 V W BEE 2 DR

| TYPE OF TITLE | CERTIFICATE NO. | COLOR/MTER/HP | DEALER ID | AXLES PROP | FUEL |
|---|---|---|---|---|---|
| STANDARD | | | 00387N | 2 | 0 |

FEE 40.00 DATE 06-05-2008 MILEAGE 98992 A STATUS

F-FARM 8-SALVAGE
P-POLICE T-TAXI
L-LEMON LAW

OWNER(S)

DEBORAH A WINTERBOTTOM
212 WEST 25TH AVE.
NORTH WILDWOOD NJ 08260 2532

ACTUAL MILEAGE
NOT ACTUAL MILEAGE
MILEAGE EXCEEDS MECHANICAL LIMITS

NUMBER OF OWNERS: 1

NUMBER OF LIENHOLDERS 1

OWNER DL/CC #: W4525 15861 58565

AB087913

State of New Jersey
MOTOR VEHICLE COMMISSION

LIEN RELEASED BY:
SIGNATURE
TITLE DATE

LIEN RELEASED BY:
SIGNATURE
TITLE DATE

DATE 06-05-2008
83033 50745 37050
STATE FARM BANK
PO BOX 5961
MADISON WI 53705

RG2008157000000002

ALTERATION OR ERASURE VOIDS THIS TITLE. KEEP IN SAFE PLACE

VOID IF ALTERED

---

THIS IS A RECEIPT DOCUMENT ONLY

VIN: 1 3VWCC21C7YM477264 Z MILEAGE: 98992 A DUP: STATUS:
V W 2000 2 DR BEE 7 AXLE:2 DEALER ID:00387N
W4525 15861 58565 TITLE I : 40.00
DEBORAH A WINTERBOTTOM SALES TAX : 0.00
212 WEST 25TH AVE. LFIS : 0.00
NORTH WILDWOOD NJ 08260 2532 TOTAL : 40.00
  RG200815700000002 40.00 I STANDARD

LIENHOLDER(S)
83033 50745 37050
STATE FARM BANK

AB087913

**ODOMETER DISCLOSURE STATEMENT AND STATEMENT OF SELLER**

NOTE:    FEDERAL LAW requires that you state the mileage upon transfer of ownership. Failure to complete this disclosure or providing false information may result in fines and/or imprisonment.

*PLEASE RUB TO VERIFY*

I/We state that the odometer now reads _____ (do not show tenths of a mile) and to the best of my/our knowledge that reflects the actual mileage of the vehicle described on the reverse side of this Certificate of Ownership, unless one of the following statements is checked:

____(1) I/We hereby certify that to the best of my/our knowledge the odometer has exceeded its mechanical limits and the reading started again at zero.

____(2) WARNING - ODOMETER DISCREPANCY - I/We hereby certify that the odometer reading is NOT the actual mileage, and should not be relied upon for accuracy.

NOTE: New Jersey statute provides that anyone who knowingly or willfully misrepresents the description of a vehicle or makes a false statement in any title papers; forges, changes or counterfeits a part of title papers; or uses title papers on or for the wrong motor vehicle is guilty of a misdemeanor.

I/We hereby assign the Warrant Certificate of Ownership of the vehicle described on the front of this Certificate of Ownership subject to the following lien(s) or encumbrance(s), if any, and none other. I/We further certify the accuracy of the sale price and mileage as specified below.

Buyer's Name (Print) _____

Buyer's Address _____

Co-Buyer's Name (Print) _____

Co-Buyer's Address _____

Lienholder's Name (Print) _____

Lienholder's Address _____

Seller's Name (Print) _____

Seller's Address _____

Driver Lic. # _____

Corpcode # _____

Sales Tax Exemption # _____

Driver Lic. # _____

Corpcode # _____

Driver Lic. # _____

Corpcode # _____

Date of Sale _____

Sale Price $ _____

Net Sale $ _____

Sales Tax Paid $ _____

**SELLER SIGN HERE**

Seller's Name (Hand Print) _____

Seller's Signature X _____

Seller's Name (Hand Print) _____

Seller's Signature X _____

Date of Odometer Statement _____

**STATEMENT OF BUYER**

I/WE, the undersigned, hereby certify that the motor vehicle described on the reverse side of this Certificate of Ownership was purchased by me/us and I/We have compared the vehicle identification number shown on this certificate with that of the motor vehicle purchased and found that they agree in every particular.

NOTE: R.S.39:10-11 requires that this certificate after assignment be presented to the MOTOR VEHICLE COMMISSION within ten days. Failure to do so will result in a penalty of $25 which will be in addition to the filing fee for a new Certificate of Ownership.

**BUYER SIGN HERE**

Buyer's Name (Hand Print) _____

Buyer's Signature X _____

Buyer's Name (Hand Print) _____

Buyer's Signature X _____

ALTERATIONS OR ERASURES WILL VOID THIS CERTIFICATE

AB087913

# CUSTOMER COPY

## KEEP THIS COPY IN A SAFE PLACE, SEPARATE FROM THE TITLE,

## SHOULD YOU REQUIRE THE INFORMATION THAT IS AVAILABLE ON

## THIS FORM FOR FUTURE REFERENCE.